IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION
FILED
JUN 2 3 2015
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>Plaintiff/Respondent, <br><br>vs. <br><br>MICHAEL AARON STUKER, <br><br>Defendant/Movant. | Cause No. CR 11-096-BLG-DLC <br> CV 14-143-BLG-DLC <br><br> Cause No. CR 11-097-BLG-DLC <br> CV 14-144-BLG-DLC <br><br> ORDER DENYING § 2255 MOTIONS AND DENYING CERTIFICATES OF APPEALABILITY |

On October 31, 2014, Defendant/Movant Stuker filed a motion to vacate, set aside, or correct his sentences in these cases under 28 U.S.C. § 2255. Stuker is a federal prisoner proceeding pro se.

On March 9, 2015, the parties and Stuker's trial counsel were ordered to address Stuker's claim that counsel failed to relay a plea offer. All responses have been submitted. The United States, however, filed its response only in Cause No. CR 11-97-BLG, and trial counsel filed his response only in Cause No. CR 11-96-BLG. The Clerk will correct the record.

## I. Background

On July 22, 2011, Special Agent Jordan Kuretich of the Federal Bureau of Investigation swore out a complaint charging Stuker and his brother, Josh Swan, with witness intimidation, a violation of 18 U.S.C. §§ 1512(a)(1)(A) and 2. The complaint alleged that, on July 1, 2011, Stuker and Swan went to the apartment of

1

one R.B., whom they had reason to believe would be a witness against Joe Lira, a friend of theirs. Lira was facing trial within the month on federal drug and gun charges. Stuker was alleged to have pointed a gun at R.B. and said, "I hope you don't plan on doing anything with Joe." R.B. reported the incident when he met with law enforcement officers to discuss his testimony at Lira's trial, which was then three days away. United States Magistrate Judge Carolyn S. Ostby signed the complaint and issued a warrant for each man's arrest. Compl. (Doc. 1)[1] at 1-2; Warrant (Doc. 3); *see also* Presentence Report ¶ 9.

In the early morning hours of July 29, 2011, United States Marshals received information that Stuker would be arriving by vehicle at a trailer park in Lockwood. The Marshals reached the trailer park before Stuker and made a plan to block his exit with their vehicles. They did so, but before he was apprehended, Stuker attempted to back out, paused where he could see USM Tofte's vehicle behind him, then rapidly accelerated backward ten to 30 feet, colliding with Tofte's vehicle. Stuker then accelerated forward again, attempting to elude the Marshals, but lost control and ran into a chain-link fence. He was apprehended and arrested on Judge Ostby's warrant. Warrant Return (Doc. 11) at 1; Presentence Report ¶¶ 30-35; *see also* Mem. at 5, *United States v. Stuker*, No. 12-30230 (9th Cir. Nov. 7, 2013) (unpublished) (Doc. 155).

---

[1] Unless otherwise indicated, citations to documents in the Court's record refer to Cause No. CR 11-96-BLG.

On August 19, 2011, a grand jury charged Stuker and his brother, co-defendant Joshua Swan, with witness intimidation, a violation of 18 U.S.C. §§ 1512(a)(2)(A) and 2, and possessing a firearm in furtherance of a crime of violence, a violation of 18 U.S.C. §§ 924(c) and 2. Indictment (Doc. 18) at 2-3. Attorney John C. Heenan was appointed to represent Stuker. The first indictment was assigned Cause No. CR 11-96-BLG.

Based on the events of his arrest, Stuker was also charged in a separate indictment with two counts of assault on federal officers, that is, USM Tofte and USM Hornung, in violation of 18 U.S.C. § 111(a) and (b). The second indictment was assigned Cause No. CR 11-97-BLG. Indictment (CR 11-97 Doc. 1) at 2-3.

Stuker went to trial on both indictments. He was convicted on both counts of the first indictment and on the first count of the second indictment. Verdict (Doc. 116) at 1-2. He was acquitted on the second count of the second indictment. Verdict (CR 11-97 Doc. 31) at 1-2. His brother, Josh Swan, was acquitted on both counts of the first indictment.

A presentence report was prepared. On the first indictment, Stuker's advisory guideline range on Count 1 was 46 to 57 months, followed by a mandatory seven-year consecutive sentence on Count 2. Sentencing Tr. (Doc. 153) at 10:17-12:10; 18 U.S.C. § 924(c)(1)(A)(ii), (D)(ii); *see also* Presentence Report ¶¶ 54-64, 73. On the second indictment, Stuker's advisory guideline range was 70-

87 months. Sentencing Tr. (CR 11-97 Doc. 71) at 11:13-12:25; *see also* Presentence Report (CR 11-97 Doc. 63) ¶¶ 52-62, 71. Stuker was sentenced to a total term of 200 months in prison, followed by a three-year term of supervised release. Minutes (Doc. 142); Judgment (Doc. 143) at 2-3; Minutes (CR 11-97 Doc. 60); Judgment (CR 11-97 Doc. 61) at 2-3.

Stuker appealed. His convictions and sentences were affirmed. *United States v. Stuker*, Nos. 12-30230, 12-30231 (9th Cir. Nov. 7, 2013) (unpublished) (Doc. 155). His conviction became final on February 5, 2014. *Gonzalez v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 653-54 (2012).

Stuker timely filed his § 2255 motion on October 31, 2014. 28 U.S.C. § 2255(f)(1).

## II. Claims and Analysis

Stuker claims counsel was ineffective in two respects. Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Stuker must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient

4

showing on one." *Id.* at 697.

**A. Gun Enhancement**

Stuker claims that counsel was ineffective because he failed to argue that a gun enhancement was impermissibly "double-counted" in the sentence entered in No. CR 11-96. First, counsel did argue against an 8-level enhancement. Def. Sent. Mem. (Doc. 141) at 3-5 (re: ¶ 55). Second, nothing was counted twice. Stuker received an eight-level upward adjustment in the base offense level because he went to the witness's home to threaten him, not because he also pointed a gun at the witness. Presentence Report ¶ 55; Sentencing Tr. (Doc. 153) at 10:24-11:6. Stuker's conviction on Count 2, using or carrying a firearm during and in relation to a crime of violence, resulted in a mandatory consecutive seven-year sentence, independently of any guideline calculation. 18 U.S.C. § 924(c)(1)(A)(ii), (D)(ii). Counsel is not ineffective for failing to raise a meritless objection. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005).

Neither prong of the *Strickland* test is met. This claim is denied.

**B. Proposed Plea Agreement**

Stuker contends that counsel "failed to present or reveal any plea bargain during the plea bargain stage or at all before trial." He adds, "I was never informed of a plea offer until months after my direct appeal was denied." Mot. § 2255 (Doc. 157) at 4 ¶ 5A; *see Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1408 (2012).

5

Stuker's claim is based on an affidavit submitted by his brother and former co-defendant, Josh Swan, in January 2015, three months after Stuker filed his § 2255 motion. Swan avers that, on or about March 18, 2014, defense counsel's secretary told Swan that the United States presented a proposed plea agreement to counsel. She did not know whether counsel relayed the plea offer to Stuker. Swan Aff. (Doc. 159) at 1 ¶¶ 4-5.

Stuker was ordered to provide more information about this claim, and the United States and defense counsel were ordered to produce all materials in their possession regarding plea offers or discussions. Defense counsel's response was not made available to the United States. *See* Order (Doc. 160) at 2-3.

In response, Defense counsel averred that he does not recall receiving any plea offer, formal or informal, from the United States.[2] Both the United States and defense counsel aver that they located no written plea offers and no e-mail discussions of possible plea agreements. *See* Ex Parte Resp. by Counsel (Doc. 162) at 1-2 ¶¶ 2-4; Gov't Resp. (CR 11-97 Doc. 81) at 2.

Stuker's response states that he "would have accepted any 'plea agreement' . . . that carried less prison time than the 130 months and 70 months that he received at sentencing . . . and any acceptance of responsibility in both sentences would have reduced the sentences to lesser prison time." Stuker Resp. (Doc. 161) at 2-3.

---

[2] The prosecutor who handled Stuker's trials has since retired.

6

But Stuker did not know, at the time when plea negotiations would have occurred, what sentence he would eventually receive. It is logically impossible that he would have weighed any plea offer against sentences of 130 months or 70 months in prison.

Stuker has never alleged he did not know that pleading guilty was likely to result in a lesser sentence than he would receive if convicted at trial. Moreover, Stuker's decisions to stand trial on both indictments were plainly based on a reasonable view of the evidence in each case. He was acquitted on one count of the second indictment. At trial of the first indictment, counsel demonstrated that the victim might be either paranoid or the recipient of unfavorable attention from several people, and he significantly undermined the victim's credibility. *See* 2 Trial Tr. (Doc. 130) at 93:1-97:24, 100:15-19, 102:15-107:25. Counsel also called into question the victim's and another witness's testimony about the width of the gap in the door through which each saw Stuker. *Id.* at 114:14-16, 122:3-13, 131:23-132:13, 143:20-144:2, 195:12-205:20. And Stuker himself, as well as his father and fiancée, testified that he was in Lodge Grass at the time R.B. claimed Stuker threatened him. *Id.* at 209:9-211:14, 217:23-219:4, 225:22-226:8. In short, Stuker's conviction depended on whether the jury found the prosecution's witnesses more credible than his own and his witnesses' testimony.

Under other circumstances, further proceedings might be warranted. Here,

however, given the reasonableness of Stuker's decision to stand trial, the lack of any written documentation of the terms of the alleged offer,[3] and the logical impossibility of Stuker's weighing the offer's terms against the sentences he actually received, the claim is too speculative. Stuker simply has no realistic prospect of demonstrating a reasonable probability that, when he did not know whether he would be convicted or acquitted or what his sentences would actually be if convicted, he would have pled guilty rather than proceeding to trial. On the record as supplemented, this claim is denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

---

[3] It is not just the total sentence that is involved in a plea offer. In this District, pleas under Fed. R. Crim. P. 11(c)(1)(C) are rarely accepted. But the parties could have bargained over recommendations for particular adjustments or enhancements, dismissal of one or more charges, or the prospect of Stuker's testifying against other persons who might have been involved in the intimidation of R.B., including Swan or Joe Lira.

8

(2000)).

Neither of Stuker's claims meets the relatively low threshold for a COA. Stuker claims counsel was ineffective because he failed to object to "double-counting" of a sentencing enhancement; not only did counsel object at length, there was no double-counting. As to Stuker's claim that counsel failed to relay a plea agreement to him, not one single term of the alleged offer, assuming it existed, is documented, and Stuker ventures into logical impossibility when he claims he would have accepted, before trial, any offer that would have resulted in sentences less than those actually imposed after trial.

Reasonable jurists would find no basis to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. The Clerk shall file in Cause No. CR 11-96-BLG the document the United States filed as Doc. 81 in Cause No. CR 11-97-BLG.

2. The Clerk shall file *ex parte* in Cause No. CR 11-97-BLG the document trial counsel filed *ex parte* as Doc. 162 in Cause No. CR 11-96-BLG.

3. Stuker's motions to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 157, CR 11-97 Doc. 75) are DENIED;

4. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Stuker files a Notice of Appeal;

5. The Clerk of Court shall ensure that all pending motions in these cases and in CV 14-143-BLG-DLC and CV 14-144-BLG-DLC are terminated and shall close each civil file by entering judgment in favor of the United States and against Stuker.

DATED this 23rd day of June, 2015

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court