IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>MICHAEL AARON STUKER,<br><br>Defendant/Movant. | Cause No. CR 11-096-BLG-DLC<br>CV 20-108-BLG-DLC<br><br><br>ORDER DENYING § 2255 MOTION<br>AND GRANTING CERTIFICATE OF<br>APPEALABILITY |

On July 17, 2020, the Ninth Circuit Court of Appeals authorized Defendant/Movant Stuker to file in this Court a second motion (Doc. 169-2 at 8–21) under 28 U.S.C. § 2255.  *See* Order (Doc. 169-3).  The United States has filed an answer (Doc. 173) and Stuker a reply (Doc. 174).

## I. Background

On July 22, 2011, Special Agent Jordan Kuretich of the Federal Bureau of Investigation swore out a complaint charging Stuker and his brother, Joshua Swan, with witness intimidation, a violation of 18 U.S.C. §§ 1512(a)(1)(A) and 2.  The complaint alleged that, on July 1, 2011, Stuker and Swan went to the apartment of one R.B., whom they had reason to believe would be a witness against Joe Lira, a friend of theirs.  Lira was facing trial within the month on federal drug and gun charges.  According to the complaint, Stuker pointed a gun at R.B. and said, "I

1

hope you don't plan on doing anything with Joe." R.B. reported the incident when he met with law enforcement officers to prepare for his testimony at Lira's trial, which was then three days away. *See* Compl. (Doc. 1) at 1–2; *see also* Presentence Report ¶ 9.

On August 19, 2011, a grand jury charged Stuker and Swan with witness tampering in violation of 18 U.S.C. §§ 1512(a)(2)(A) and 2 (Count 1), and possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2 (Count 2). *See* Indictment (Doc. 18) at 2–3.[1]

Stuker and Swan stood trial before a jury. Swan was acquitted, but the jury found Stuker guilty on both counts. *See* Verdicts (Docs. 115, 116).

A presentence report was prepared. Stuker's advisory guideline range on Count 1 was 46 to 57 months. The sentence on Count 2 was at least seven years, consecutive to Count 1. *See* Sentencing Tr. (Doc. 153) at 10:17–12:10; 18 U.S.C. § 924(c)(1)(A)(ii), (D)(ii); *Harris v. United States*, 536 U.S. 545, 556 (2002), *overruled by Alleyne v. United States*, 570 U.S. 99, 103 (2013); *see also* Presentence Report ¶¶ 54–64, 73. He was sentenced to serve 46 months on Count 1 and 84 months on Count 2 for a total of 130 months in prison, to be followed by

---

[1] In a separate indictment returned the same day, Stuker was charged with one count of assault on a federal officer. The case was tried before a different jury. Stuker was convicted and sentenced to serve 70 months in prison, consecutive to the sentence in this case. *See* Judgment (Doc. 61), *United States v. Stuker*, No. CR 11-97-BLG-DLC (D. Mont. June 29, 2012).

a five-year term of supervised release.  *See* Minutes (Doc. 142); Judgment (Doc.

143) at 2–3.

Stuker appealed.  His conviction and sentence were affirmed.  *See United States v. Stuker*, No. 12-30230 (9th Cir. Nov. 7, 2013) (unpublished mem disp.) (Doc. 155).  His conviction became final on February 5, 2014.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Stuker timely filed his first motion under 28 U.S.C. § 2255 on October 31, 2014.  *See* Mot. § 2255 (Docs. 157).  The motion and a certificate of appealability were denied on June 23, 2015.  *See* Order (Doc. 165).  Stuker did not appeal.

On October 1, 2019, Stuker applied to the Ninth Circuit Court of Appeals for leave to file a second motion under 28 U.S.C. § 2255.  As noted above, on July 17, 2020, the appellate court granted Stuker leave to file his second motion in this Court.  *See* 28 U.S.C. §§ 2255(h), 2244(b)(3)(A).

## II.  Analysis

Stuker challenges the validity of his conviction on Count 2, the gun count under 18 U.S.C. § 924(c).  As relevant here, § 924(c) prohibits the possession of a firearm in furtherance of a "crime of violence"—in this case, witness tampering, a violation of 18 U.S.C. § 1512(a)(2)(A), as alleged and proved in Count 1.  He contends that witness tampering does not fit the legal definition of a "crime of violence."

Section 924(c) contains two definitions of a "crime of violence":

[T]he term "crime of violence" means an offense that is a felony and—

(A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

In *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), the Supreme Court held that subsection (B), commonly called the "residual clause," "provides no reliable way to determine which offenses qualify as crimes of violence and thus is unconstitutionally vague."  *Id*. at 2324; *see also Johnson v. United States*, 576 U.S. 591, 597 (2015) ("*Johnson II*")[2] (addressing residual clause of 18 U.S.C. § 924(e)(2)(B)(ii)); *Sessions v. Dimaya*, __ U.S. __, 138 S. Ct. 1204, 1216 (2018) (addressing residual clause of 18 U.S.C. § 16(b)).

Subsection (B) can no longer support a conviction under § 924(c), but subsection (A) remains valid.  Thus, the United States argues that Stuker is not entitled to relief because his conviction under § 924(c) did not rest on the residual clause but on the "elements clause," § 924(c)(3)(A).

---

[2]  The Court will refer to this decision as *Johnson II* to distinguish it from another relevant Supreme Court decision involving a different individual, also named Johnson, issued in 2010.  *See Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*"); *see also infra* at 13–15.

The parties' briefs raise two questions.  First, may Stuker proceed with his motion, even though it is his second under 28 U.S.C. § 2255?  And second, if he may proceed, is he entitled to relief?

## A.  Does Stuker Meet the Requirements of § 2255(h)(1)?

The Court of Appeals granted Stuker leave to file a second motion in this Court.  *See* Order (Doc. 169-3).  But obtaining leave to file in the district court is only the first of two procedural hurdles Congress imposes on second or successive motions under 28 U.S.C. § 2255.  A district court must "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements" for relief specially applied to second or successive motions.  28 U.S.C. §§ 2244(b)(4), 2255(h)(2).

28 U.S.C. § 2255(h)(2) requires Stuker to show that his motion "contain[s]" a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court" and that "was previously unavailable."

### 1.  Is *Davis* a New, Previously Unavailable Constitutional Rule Applicable on Collateral Review?

The Court asked the parties to "discuss the significance, if any," of 28 U.S.C. § 2244(b)(4).  *See* Order (Doc. 172) at 2.  The United States does not claim that *Davis* did not announce a new rule, nor does it argue that the Supreme Court has yet to make *Davis* retroactively applicable to cases on collateral review.  The

Court will accept that those requirements are met.  *See, e.g.*, *United States v. Clark*, __ Fed. Appx. __, 2021 WL 1652042 at *3, No. 20-10364, slip op. at 5 (5th Cir. Apr. 27, 2021) (per curiam) (unpublished mem. disp.) (reversing district court's denial of second motion under § 2255 and holding that merits panel was "constrained to follow other panels of this court in applying *Davis* retroactively to a successive § 2255 motion"); *see also In re Harris*, 988 F.3d 239, 239 (5th Cir. 2021) (per curiam); *In re Thomas*, 988 F.3d 783, 788–90 (4th Cir. 2021); *King v. United States*, 965 F.3d 60, 64 (1st Cir. 2020); *In re Franklin*, 950 F.3d 909, 910 (6th Cir. 2020); *In re Mullins*, 942 F.3d 975, 979 (10th Cir. 2019); *In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019); *In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019) (all authorizing filing in district court after finding *Davis* satisfies criteria of § 2255(h)(2)); *but see Harris*, 988 F.3d at 239–41 (Oldham, J., concurring in authorizing filing of successive § 2255 motion in district court) ("[I]t seems odd that we're all just assuming the Supreme Court would want us to extend *Johnson* and *Welch* to a new statute."); *In re Hall*, 979 F.3d 339, 346–47 (5th Cir. 2020) (arguing, in dicta, that *Davis* does not satisfy criteria of § 2255(h)(2)).

### 2.  Does Stuker's Motion "Contain" a *Davis* Claim?

The answer to this question seems obvious.  Section 2255(h)(2) requires Stuker to show his motion "contain[s]" a claim under *Davis*.  At page 2 of his motion, Stuker says his conviction under § 924(c) "should be vacated . . . in light

of *United States v. Davis*, 139 S. Ct. 2319 (2019)."  Mot. § 2255 (Doc. 169-2) at 2.

Ergo, the motion contains a claim under *Davis*.  If more were needed, Stuker can

also show he was indeed convicted under § 924(c).  But it is a little more

complicated than that.

The Ninth Circuit interprets the word "contain" to require the defendant to

show that his claim "relies on" the new rule.  *See United States v. Geozos*, 870

F.3d 890, 894–95 (9th Cir. 2017) (applying 28 U.S.C. § 2244(b)(2)(A)), *implied*

*overruling on other grounds recognized by Ward v. United States*, 936 F.3d 914,

919 (9th Cir. 2019) (discussing *Stokeling v. United States*, __ U.S. __, 139 S. Ct.

544, 553 (2019)).

The United States argues that Stuker's motion does not rely on *Davis*

because his conviction for witness tampering qualifies as a "crime of violence"

under the elements clause, § 924(c)(3)(A).  This argument could have two separate

meanings.  The second goes to the merits of the claim and asks whether, under

current case law, witness tampering is a crime of violence under the elements

clause.  But the first, discussed here as a procedural defense to Stuker's motion,

asks whether case law at the time Stuker's case was litigated clearly held that

witness tampering was a crime of violence under the elements clause and not under

the residual clause.

In *Geozos*, a case involving *Johnson II's* application as a "new rule," the

court explained that "a claim does not 'rely on' *Johnson* if it is possible to conclude, using both the record before the [district] court and the relevant background legal environment at the time," that the court's decision "did not rest on the residual clause." *Id*. at 896.  Applying this approach, the Court has located appellate cases involving convictions under 18 U.S.C. § 924(c) that are predicated on witness tampering under 18 U.S.C. § 1512(a)(2)(A).  But it has not located appellate cases that decide whether witness tampering under § 1512(a)(2) is a "crime of violence" under the elements clause or, instead, under the residual clause of § 924(c)(3).[3]  The parties do not identify any such cases.  Nor do they contend that anyone asked the presiding judge to decide or clarified the record to specify why witness tampering was properly deemed a "crime of violence."

As the court reasoned in *Geozos*, "where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that *may have* rested on that ground."  *Geozos*, 870 F.3d at 896 (quoting *Griffin v. United States*, 502 U.S. 46, 53 (1991)) (internal brackets omitted) (emphasis in *Geozos*).  It is true, as the United States says, that the definition of "physical force" as "physical action against another," 18 U.S.C. § 1515(a)(2), is echoed in § 924(c)(3)(A): "physical force against the person or property of another."  But the residual clause, § 924(c)(3)(B), uses the same

---

[3]  Or, for that matter, a "violent felony," *see* 18 U.S.C. § 924(e)(2)(B), as in *Johnson II*.

phrase: "physical force against the person or property of another."  And if anyone

involved in the original proceedings in Stuker's case thought to take a close look at

these provisions, they would have seen differences as well as similarities (as the

close look in Part B(2) demonstrates).

A reasonable person could well have believed that, even if § 924(c)(3)(A)

did not capture Stuker's conduct, he still would not have a viable defense to Count

2, precisely because the residual clause was so capacious.  In *James v. United

States*, 550 U.S. 192 (2007), for example, the Supreme Court found that attempted

burglary posed a sufficient "serious potential risk of physical injury" to place it in

the category of a "violent felony."  *See id*. at 201–09.  The Court acknowledged

that "[o]ne could, of course, imagine a situation in which attempted burglary might

not pose a realistic risk of confrontation or injury to anyone."  *See id*. at 207.  But,

it said, a "serious potential risk" was an "inherently probabilistic concept[]," *id.*,

justifying a categorical conclusion even when a case-by-case analysis would not

reach the same result every time.  Likewise, at the time of Stuker's trial, reasonable

lawyers and jurists could have decided that witness tampering involving physical

force would, "by its nature" and to an appropriate degree of probability, involve a

"*substantial risk* that physical force . . . *may* be used in the course of committing

the offense."  The very capaciousness of this probabilistic speculation is a leading

reason why the Court later overruled *James* in *Johnson II*.  *See Johnson II*, 576

U.S. at 606.

If, at the time Stuker's case was litigated, case law clearly held that witness tampering under § 1512(a)(2) was a "crime of violence" under the elements clause of § 924(c)(3)(A), not under the residual clause, the United States would have a true procedural defense to Stuker's motion.  *See Geozos*, 870 F.3d at 896.  The Court has found no such case.  As Stuker's conviction *may have* rested on the residual clause, *see id.*, Stuker's motion "relies on" *Davis* as required by § 2255(h)(2).

### 3.  Conclusion

Stuker shows that his motion "contain[s]" a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court" and that "was previously unavailable."  28 U.S.C. § 2255(h)(2); *see also* 28 U.S.C. § 2244(b)(4).  He is entitled to consideration of the merits of his claim.

### B.  Is Stuker Entitled to Relief?

The next question is whether Stuker's conviction on Count 2 is valid under the elements clause, § 924(c)(3)(A), as the clause is applied today.  He is not entitled to relief if witness tampering under § 1512(a)(2)(A) always qualifies as a crime of violence under § 924(c)(3)(A).  The United States argues that all convictions under § 1512(a)(2) categorically qualify as crimes of violence.  Stuker contends that none do.  For the reasons explained below, the Court finds that some

10

do and some do not.

### 1.  "Physical Force"

Before considering the witness tampering statute in detail, the Court will address Stuker's broad argument that no conviction for witness tampering under § 1512(a)(2) can be a crime of violence.  He contends that the term "physical force" in § 924(c)(3)(A) does not mean the same thing as the term "physical force" in § 1515(a)(2), which defines the meaning of the term in § 1512(a)(2).

As used in § 1512, "the term 'physical force' means physical action against another, and includes confinement."  18 U.S.C. § 1515(a)(2).  Stuker makes two arguments.  First, he contends that the act of confining someone, for example, by shutting a door, *see* Reply (Doc. 174) at 12, does not amount to "the use, attempted use, or threatened use of physical force against the person or property of another," as § 924(c)(3)(A) requires.[4]  He reasons that the meaning of the term "confinement" is similar to the meaning of the term "detention," which is used in the statute prohibiting hostage taking, *see* 18 U.S.C. § 1203(a); that case law shows detention may be accomplished by deception rather than by physical means; and

---

[4]  Stuker also seems to argue that a defendant can *threaten* to use physical force against a witness without *using* physical force:  "Making a cutting motion [across the neck] is not the type of violent physical force required to be a crime of violence under § 924(c)."  Mot. § 2255 (Doc. 169-2) at 6.  That is true.  But § 924(c)(3)(A) includes threats to use physical force.  The evidence must be sufficient for a jury to conclude the defendant means to threaten the use of physical force or knows he will be understood to threaten the use of physical force, *cf. Elonis v. United States*, 575 U.S. 723, 740 (2015), but, in appropriate circumstances, a cutting motion across the neck could support such a finding beyond a reasonable doubt.

that "[i]f hostage taking does not qualify as a crime of violence, then there should be no question witness tampering does not either." *See* Reply at 13–14 (discussing briefs filed in *United States v. Hernandez*, No. 18-10334 (11th Cir. appeal filed Jan. 29, 2018)).

This argument falters because it removes key words from their respective contexts. Words are known by their companions. *See Williams v. Taylor*, 529 U.S. 420, 435–46 (2000) (quoting *Gutierrez v. Ada*, 528 U.S. 250, 255 (2000)). If evidence sufficient to prove "detention" were also sufficient to prove "confinement," § 1515(a)(2) would say, in effect, "the term 'physical force' means physical action against another, and includes deceit." That does not make sense and is not what Congress said. (In fact, "misleading conduct" is included in a different subsection of the witness tampering statute, § 1512(b). Subsection (b) does not use the term "physical force" and is not at issue here.) By referring to "confinement" in context with "physical force" and "physical action," Congress indicated an act of physically restricting a person's freedom of movement, not merely convincing or cajoling someone to stay put.

Stuker's second argument concerns the quantum of force that counts as "physical force." This line of argument originates in *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*"). There, the Supreme Court held that a defendant's conviction for battery under Florida law was not a "violent felony." The Court

acknowledged that Florida recognized even "offensive touching" as sufficient to prove battery, but it found that so slight a degree of physical energy or action could not be what Congress meant by the term "physical force" as used in 18 U.S.C. § 924(e)(2)(B)(i).  Stuker, deploying the *Johnson I* argument, contends that "confinement through physical *action*—such as shutting the door to a room where a victim is located—can still take place without the use of physical *force*."  Reply at 12.

The Court disagrees.  Unlike detention by deceit, confinement cannot be accomplished without imposing physical restraint in the form of the closed door. The act of confining someone in order to prevent them (or someone else) from testifying is an intentional, "active employment" of physical force *against* another person.  *Cf. Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).  Physics may say the door claims a greater share of kinetic and potential energy, but the law says the defendant is responsible regardless of whether the forceful energy is in his hand or an implement available to his hand.  Lack of direct physical contact between defendant and victim, in other words, does not necessarily indicate lack of physical force.  *See, e.g.*, *United States v. Castleman*, 572 U.S. 157, 170–71 (2014).

"Physical force" as used in § 924(c)(3)(A) means "force capable of causing physical pain or injury to another person," *Johnson I*, 559 U.S. at 140, or "the amount of force necessary to overcome a victim's resistance," *Stokeling v. United*

*States*, __ U.S. __, 139 S. Ct. 544, 555 (2019). *See United States v. Watson*, 881

F.3d 782, 784 (9th Cir. 2018) (per curiam); *United States v. Gutierrez*, 876 F.3d

1254, 1256, 1257 (9th Cir. 2017) (per curiam) (both applying *Johnson I*'s

construction of "physical force" to § 924(c)).  It is "'force exerted by and through

concrete bodies,' as opposed to 'intellectual force or emotional force.'"

*Castleman*, 572 U.S. at 170 (quoting *Johnson I*, 559 U.S. at 138).  Confinement is

a physical overcoming of a victim's resistance to remaining in a particular place.

And it is difficult to imagine how a defendant could employ a mere "offensive

touch" or "ta[p] . . . on the shoulder without consent," *Johnson I*, *see* 559 U.S. at

138, *with intent* to "influence, delay, or prevent the testimony of any person in an

official proceeding," 18 U.S.C. § 1512(a)(2), but *without* communicating the

potential for other physical action the defendant would be capable of using in order

to bend the victim to his will.  In the Court's view, a rational juror could find that a

nonconsensual tap with intent to influence a witness is a threat to use physical

force capable of causing pain or injury.

Witness tampering is not proved merely by physical action but by physical

action or the prospect of physical action with intent to cause or induce someone to

withhold evidence.  *See* 18 U.S.C. § 1512(a)(2)(A)–(C).  There is no reason to

suppose a defendant could be convicted if, for instance, he only waves his arms

without communicating capacity and intent to *use* physical force *against* a person.

14

Stuker's arguments concerning the meaning of "physical force" in §
1515(a)(2) are not persuasive.  The Court sees no reason to distinguish the force
described in § 1515(a)(2) from the force described in § 924(c)(3)(A).

### 2.  Is Witness Tampering a Crime of Violence?

To decide whether a given offense is a "crime of violence," courts must use
categorical analysis.  This mode of analysis never glances in the direction of a
defendant's conduct.  It only canvasses "the elements of the statute forming the
basis of the defendant's conviction"—or, here, the elements of the predicate
offense under § 924(c)—to determine whether they fall within or spill outside the
parameters of the elements clause.  *See Descamps v. United States*, 570 U.S. 254,
257 (2013).

The first task, therefore, is to identify the relevant elements of witness
tampering.  18 U.S.C. § 1512 "comprises multiple, alternative versions of the
crime" of witness tampering.  *See Descamps*, 570 U.S. at 262.  For instance, §
1512(a)(1) requires proof of a killing or an attempt to kill.  Section 1512(a)(2) does
not.  In terms of categorical analysis, this discrepancy means the statute is
divisible, and the Court may "consult a limited class of documents, such as
indictments and jury instructions," *id.* at 257, to "identify, from among several
alternatives," *id.* at 264, the elements of the predicate offense.  Stuker's indictment

singled out 18 U.S.C. § 1512(a)(2)(A), and the jury was instructed on its terms.[5]

*See* Indictment (Doc. 18) at 2; Jury Instr. No. 11 (Doc. 108 at 12).

18 U.S.C. § 1512(a)(2)(A) provides:

(2)    Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—

(A)    influence, delay, or prevent the testimony of any person in an official proceeding;

. . .

shall be punished as provided in paragraph (3).

Grammatically, the statutory phrase in § 1512(a)(2)—"uses physical force or the threat of physical force against any person, or attempts to do so"—might be taken to indicate one element that can be proved in four ways: by showing use of physical force, or threat to use physical force, or attempt to use physical force, or attempt to threaten to use physical force. But that construction would be wrong.

Subsection (a)(3) of the statute imposes a 30-year maximum penalty for the

---

[5]  The indictment and jury instructions also cited 18 U.S.C. § 2, the aiding and abetting statute. But circuit precedent holds that categorical analysis considers only the elements of the predicate offense. An aider and abettor is liable for the predicate offense even if he did not facilitate every element of it. *See Rosemond v. United States*, __ U.S. __, 134 S. Ct. 1240, 1246–47 (2014); *United States v. Henry*, 984 F.3d 1343, 1356 (9th Cir. 2021). As the theory of liability does not alter the elements of the predicate offense, the appellate court holds that the theory of liability also does not affect the course or outcome of categorical analysis. *See, e.g.*, *Ortega-Lopez v. Barr*, 978 F.3d 680, 687 n.9 (9th Cir. 2020); *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005); *see also United States v. Cole*, No. 20-16006, slip op. at 2–3, 2021 WL 1984877 (9th Cir. May 18, 2021) (unpublished mem. disp.); *United States v. Hall*, No. 17-16166, 845 Fed. Appx. 644, 645 (9th Cir. 2021) (unpublished mem. disp.) (both applying *Ortega-Lopez* and *Garcia* to claims for relief under *Davis* and § 924(c)(3)(A)).

use or attempt to use physical force, *see* 18 U.S.C. § 1512(a)(3)(B), and a 20-year maximum penalty for a threat to use physical force, *see id*. § 1512(a)(3)(C).  "If statutory alternatives carry different punishments then under *Apprendi* they must be elements."  *Mathis v. United States*, __ U.S. __, 136 S. Ct. 2243, 2256 (2016) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  As § 1512(a)(3) expressly distinguishes between use and attempt to use physical force, on the one hand, and a threat to use physical force, on the other, it is clear that the use or attempt to use force is one element of witness tampering and the threat to use physical force is an alternative element defining what is essentially a different offense.

These two sets of elements account for three of the four potential meanings of § 1512(a)(2).  They leave out an attempt to threaten to use physical force.  Some courts have suggested "[i]t is difficult even to imagine a scenario" where it would "be clear that [a defendant] only attempted to threaten, and neither used nor even actually threatened the use of force."  *United States v. McCoy*, 995 F.3d 32, 57 (2d Cir. 2021) (internal quotation marks and brackets omitted).  That difficulty may exist when, as in *McCoy*, a defendant would have to attempt to threaten to use force to "unlawfully tak[e] or obtain[] . . . property from the person or in the presence of another, against his will," *see* 18 U.S.C. § 1951(b), but without actually attempting to use force and without actually threatening to use force.  The

*McCoy* court concluded "an inchoate attempt to threaten" to use force to obtain property "is theoretically possible," but the defendants had not shown "a 'realistic possibility' that [§ 1951(b)] will be applied in such a manner." *McCoy*, 995 F.3d at 57.[6]

By contrast, it is not difficult to imagine a scenario involving an attempt to threaten to use force to tamper with a witness.  A threat may be defined as "an expression of an intention to inflict loss or harm on another." *Elonis v. United States*, 575 U.S. 723, 732–33 (2015) (citing multiple, similar definitions).  Suppose a defendant says to an undercover agent, "I'm going to call Fred and tell him he better not testify against Joe at that trial on Monday or I'll beat him up.  He'll believe me.  I beat up people all the time.  And he knows I always carry a gun, too."  The defendant then picks up his phone, taps Fred's number, and hisses, "Fred!  Listen up!"  Before he says anything more, the agent snatches the phone out of his hand and terminates the call.

This defendant would have taken a "substantial step" toward witness tampering—a step that is "planned to culminate in the commission" of witness tampering and that is "strongly corroborative" of the defendant's criminal intent.

---

[6]  The Fourth Circuit rejected this reasoning.  *See United States v. Taylor*, 979 F.3d 203, 208–10 (4th Cir. 2020) (holding that attempted Hobbs Act robbery is not a crime of violence because it "does not invariably require the use, attempted use, or threatened use of force," *id*. at 208, and "an attempt to *threaten* force does not constitute an attempt to *use* force," *id*. at 209).

*See McCoy*, 995 F.3d at 56–57 (internal quotation marks omitted).  But he would not have expressed an intent to use physical force against Fred.  He would only have attempted to express an intent to use physical force against Fred.  A jury convinced beyond reasonable doubt that these events occurred could convict the defendant of witness tampering under § 1512(a)(2)(A) because he attempted to threaten to use physical force and he did so with the intention of preventing Fred from testifying at Joe's criminal trial.  *See, e.g.*, *United States v. Simels*, 654 F.3d 161, 174 (2d Cir. 2011) (concluding that, "[a]s to each potential witness, Simels took a substantial step toward threatening or intimidating them with the intent to improperly influence their testimony in an official proceeding.").  Unlike the court in *McCoy*, this Court finds a realistic possibility that a violation of § 1512(a)(2)(A) could be proved by only an attempted threat to use physical force.[7]

Section 1512(a)(3) does not prescribe a penalty for an attempt to threaten to use physical force.  *See* 18 U.S.C. § 1512(a)(3)(A)–(C).  But another subsection of § 1512 could.  If any offense under § 1512 "occurs in connection with a trial of a

---

[7]   The court in *United States v. England*, 507 F.3d 581 (7th Cir. 2007), *cited in* Mot. § 2255 (Doc. 169-2) at 6, found the evidence sufficient to support a conviction for witness tampering where the defendant threatened to use physical force with the intent to prevent his brother-in-law, Bull, from testifying.  As Bull had blocked the defendant's calls, the defendant made the threat to his father and told him to relay it, but the father did not do so.  Bull did not learn of the threat until law enforcement told him about it.  *See id.* at 584–85.  The offense was complete, *see id.* at 588–90, because the defendant clearly expressed an intent to act against Bull.  The statute does not require that the defendant succeed in making the witness aware of the threat, but it does require expression of the threat to use physical force.  This is the point of distinction between *England* and the hypothetical example of an attempted threat.

19

criminal case," the maximum penalty is "the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case." *Id.* § 1512(j).  Since no penalty is otherwise provided for an attempted threat to use physical force to deter a witness, the penalty would have to be, in the hypothetical example, the maximum term for Joe's offense.[8]  *See, e.g.*, *United States v. Salazar*, 542 F.3d 139, 146–48 (5th Cir. 2008); *United States v. Ruhbayan*, 527 F.3d 107, 114–15 (4th Cir. 2007), *vacated and remanded on other grounds*, 552 U.S. 1163 (2008) (citing *Kimbrough v. United States*, 552 U.S. 85 (2007)).  When a defendant is accused of witness tampering, therefore, a connection with a trial of a criminal case is generally an optional element the United States may seek to prove to enhance the penalty.  But if the defendant is charged with attempting to threaten to use physical force, connection with trial of a criminal case is an essential element establishing the penalty.

In sum, the offense defined by § 1512(a)(2)(A) is divisible into three sets of elements:

Alpha    an intent to influence, delay, or prevent the testimony of any person in an official proceeding;

and

Beta    I    a use or attempted use of physical force; or

---

[8]  So far as was known at the time of Lira's trial in 2011, the maximum penalty was life in prison.  *See* Order (Doc. 217) at 2–3, 25, *United States v. Lira*, No. CR 10-135-BLG-DWM (D. Mont. Mar. 18, 2021); 21 U.S.C. § 841(b)(1)(A)(viii).

II      a threat to use physical force; or

III    an attempt to threaten to use physical force in connection with a criminal trial.

Section 924(c)(3)(A) requires an element of use, attempted use, or threatened use of physical force against the person or property of another. A charge of witness tampering that has the elements of Alpha and either Beta I or Beta II meets the requirements of a crime of violence. Beta III does not. The predicate offense for Stuker's conviction on Count 2 rested on a divisible statute, part of which cannot constitute a crime of violence.

### 3. Was the Error Harmless?

To date, it appears the Ninth Circuit has not decided whether a § 2255 movant whose conviction under 18 U.S.C. § 924(c) rests *solely* on a divisible statute is necessarily entitled to relief,[9] or, instead, whether the Court should consider the trial transcript to determine whether there is a reasonable probability the jury's verdict was influenced by an errant instruction.

---

[9] In *United States v. Jordan*, 821 Fed. Appx. 792 (9th Cir. 2020) (unpublished mem. disp.), the court noted that the defendants were not convicted of violating a divisible statute. *See id*. at 793 ¶ 1. Stuker was. In *United States v. Hernandez*, 819 Fed. Appx. 548 (9th Cir. 2020) (unpublished mem. disp.), the court found that "a Hobbs Act conspiracy," which does not constitute a crime of violence, "was inextricably intertwined with a conspiracy to possess cocaine with intent to distribute," which does constitute a crime of violence. The defendants were convicted of both the Hobbs Act conspiracy and the cocaine conspiracy. *See id*. at 549, 549–50 ¶ 3. Unlike them, Stuker was not convicted of a separate, additional offense that is always a crime of violence.

### a. Application of Modified Categorical Analysis

Stuker's conviction on Count 2 would stand if the documents of the case showed his act of witness tampering necessarily rested on Beta I and/or Beta II. *See Mathis*, 136 S. Ct. at 1153; *Descamps*, 570 U.S. at 260 (asking "which element[s] played a part in the defendant's conviction"). The indictment charged that Stuker "used and attempted to use physical force against R.B. . . . to influence, delay, and prevent his testimony in an official proceeding, that is, the trial of *U.S. v. Joseph Dean Lira*, CR 10-135-BLG-RFC." Indictment (Doc. 18) at 2. That is only Beta I and Beta II, with the optional criminal-trial element.

The jury, however, was instructed that the United States had to prove, "First, the defendant used *or attempted to use* physical force or *the threat of physical force* against any person," and second, that the defendant acted "with the intent to influence, delay, or prevent the testimony of any person in an official proceeding, that is, the trial of *U.S. v. J.L.*" Jury Instr. No. 11 (Doc. 108 at 12) (emphases added). This instruction covered all three sets of elements contained within § 1512(a)(2), not only Beta I and II but also Beta III, an attempt to use the threat of physical force.

Because the instruction included all three sets of elements in § 1512(a)(2)(A), and because only two sets of elements include "the use, attempted use, or threatened use of physical force," application of modified categorical

analysis shows that Stuker's predicate offense was not necessarily a crime of violence.  If the analysis ends at this point, Stuker is entitled to relief.

### b.  Harmless Error

The Court does not believe that modified categorical analysis provides the final resolution of the case.  At this point, the case appears to be equivalent to any case not involving categorical analysis in which a jury was "instructed on multiple theories of guilt, one of which is improper."  *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008).  The Court is not aware of any authority "that justifies extending the categorical approach — a method for determining whether a conviction under a particular statute qualifies as a predicate offense under a particular definitional clause — to the context of determining on which of several alternative predicates a jury's general verdict relied."  *Granda v. United States*, 990 F.3d 1272, 1295 (11th Cir. 2021).  Instead, the customary approach is to examine the trial record to determine whether the conviction rested on a viable or an impermissible legal theory.  *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 414 & n.46 (2010), *discussed in Granda*, 990 F.3d at 1294–95.

On *direct* review, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  *Chapman v. California*, 386 U.S. 18, 24 (1967).  But on *collateral* review, trial errors of constitutional dimension, including instructional errors, are

considered harmless unless they had a substantial and injurious influence on the

jury's verdict.  *See O'Neal v. McAninch*, 513 U.S. 432, 436 (1995); *Brecht v.

Abrahamson*, 507 U.S. 619, 627 (1993).  The *Brecht* standard is significantly more

forgiving of error than the *Chapman* standard.  But, under *Brecht*, "if a judge has

'grave doubt' about whether an error affected a jury . . . the judge must treat the

error as if it did so."  *O'Neal*, 513 U.S. at 438 (quoting *Kotteakos v. United States*,

328 U.S. 750, 764–65 (1946)).

The question here is not a close one.  The victim testified that he had

encountered J.L.[10] in November 2010 and made a report to the police.  *See* 2 Trial

Tr. (Doc. 130) at 68:13–69:6.  The victim and his eleven-year-old stepson both

testified that, on July 1, 2011, three or more men appeared, uninvited and

unexpected, outside their apartment door.  They could see that two men had guns.

*See id.* at 74:4–8, 76:22–77:1, 77:23–25, 78:12–79:6, 122:14–15, 130:6–19.  Both

testified that one of the men who had a gun said something about "J." or "J.L." and

a trial.  The victim testified that the man pointed the gun in his face and said, "'I

hope you don't plan on doing anything with the J.L. case.'"  *See id.* at 78:12–79:1.

The boy testified that the man did not point the gun at anyone but held it in his

hand and told the victim, in a voice that was "[m]ean," "not to put J. in jail."  *Id.* at

---

[10]  The United States instructed its witnesses to refer to Lira by his initials only, to avoid prejudicing Stuker by association.  *See* 2 Trial Tr. (Doc. 130) at 57:21–25.

122:15–22, 123:11–23, 124:15–18.  The victim and the boy both testified that, based on previous acquaintance or a "road rage" confrontation twenty months earlier, in October 2009, they recognized the man holding the gun.  The victim knew he was Mike Stuker.  *See id*. at 76:25–77:1, 83:9–84:6, 126:14–128:7, 145:21–146:8.

Stuker acknowledged that he knew the victim and acknowledged the prior confrontation.  *See* 2 Trial Tr. at 223:11–224:6.  He also testified that J.L. was "a friend."  *See id.* at 247:8–11.  But he offered an alibi and denied being at the victim's apartment on July 1.  *See id*. at 225:22–226:8, 229:12–17; *see also id*. at 209:9–211:11, 217:23–219:4.

The jury was not given definitions of attempt or threat.  The Court must assume they viewed "attempt" colloquially as trying to achieve a specific end but not succeeding.  An attempt to threaten someone might consist of trying to make a threat but not reaching the point of expressing the words or gestures, as in the hypothetical example given above.  But the jury's verdict shows that it found Stuker intended to influence the victim-witness in connection with Lira's trial.  And apart from Stuker's words, the jury heard no evidence that the victim would have connected Stuker to Lira.[11]  Therefore, all twelve juror must have found that

---

[11]   The prosecutor clarified that he was permitted to ask the victim "on redirect" "if J.L. is friends with the two defendants."  2 Trial Tr. at 112:10–113:2.  At least, that appears to be what he meant, *see, e.g.*, Resp. to Second Mot. in Limine (Doc. 91) at 2, although he said "defendant"

Stuker actually articulated something about J.L. and trial. Stuker's conviction cannot mean a juror found he attempted to threaten the victim but could not get the words out. Any juror, however, could have thought that Stuker attempted to threaten the victim but did not succeed, because the victim testified against J.L. anyway. *See* 2 Trial Tr. at 86:8–9. The question is whether a juror with the "tried but did not succeed" view of an attempted threat could have convicted Stuker based on facts that did *not* also prove an *actual* threat. The law, after all, does not require that a threat succeed, only that it be made.

Although the jury found that Stuker possessed a firearm, it was not asked to decide whether Stuker brandished it.[12] The record contains conflicting evidence on the issue. One witness said he pointed it, and the other said he only held it. Due to this conflict, a rational juror might not have been convinced that Stuker pointed the firearm at the victim—might, indeed, question whether Stuker even knew the gun was visible.[13] Such a juror might have believed Stuker carried it only to embolden himself, or to protect himself in case the victim responded hostilely to the knock at the door (as the "road rage" incident might suggest), or simply because he always

---

instead of "victim." In the end, he did not ask the victim whether he knew Stuker and Lira were friends. *See* 2 Trial Tr. at 117:15–118:19.

[12] The case was tried before the Supreme Court decided *Alleyne v. United States*, 570 U.S. 99, 103–04 (2013). A verdict against Stuker on "brandishing" would put the harmlessness of the instructional error beyond reasonable doubt.

[13] All the jurors necessarily agreed the firearm *was* visible. Its visibility to one or both of the prosecution's witnesses was the only evidence Stuker possessed a firearm. But that is different from saying Stuker *knew* it was visible.

26

carried a gun.

At the door, then, Stuker made a terse statement about J. and the criminal case and did so with the intent to influence the victim's testimony.  On that view of the case, the evidence indicating Stuker invoked "physical force" could not have come from his use of the gun.  It must have come from the facts that at least two other men were standing behind Stuker, Stuker and the victim did not have a friendly, "social-call" sort of relationship, and/or Stuker spoke in a "mean" voice. Those facts could persuade a juror that Stuker wanted the victim to believe physical force might be used against him if he testified.  But if these facts support an *attempt* to threaten physical force, they also constitute a *threat* to use physical force.  A juror could not find facts sufficient to prove an attempt beyond reasonable doubt without also finding facts sufficient to prove a threat beyond reasonable doubt.

More likely, the jury believed Stuker knew the gun was visible and meant it to be part of his message to the victim.  But again, a juror who believed that would be finding one set of facts supporting both conviction for attempt to threaten physical force and also conviction for an actual threat to use physical force.

The jurors were not required to agree on all the underlying facts, such as whether Stuker knew the gun was visible.  If six jurors believed Stuker tried to threaten the witness by showing up at the witness's apartment with two or three

27

other men and sounding mean, and six jurors believed he tried to threaten the witness by sticking his gun in the witness's face, twelve jurors nonetheless found facts sufficient to prove Stuker actually threatened to use physical force against the witness.

It is true that the jury deliberated for about ten hours—about the same duration as the trial itself, including opening statements and closing arguments. *See* Minutes (Docs. 103, 112).  But the only genuine issues at trial concerned whether the incident happened at all and, if so, whether Stuker and Swan participated.  If the jury believed they were there, *why* they were there was no mystery.  And no evidence suggested an incomplete, forestalled, or misdirected threat.

Given the nature of the evidence in the case, any juror who found that Stuker attempted to threaten physical force against the victim-witness necessarily also found facts constituting an actual threat to use physical force.  Thus, inclusion of the "attempt" element in Jury Instruction No. 11 did not substantially affect the jury's verdict.  *Compare, e.g.*, *United States v. Lapier*, 796 F.3d 1090, 1097 (9th Cir. 2015) (reviewing trial evidence and finding "a risk that different jurors voted to convict on the basis of different facts establishing different offenses."); *United States v. Romero-Coriche*, 840 Fed. Appx. 138, 140 (9th Cir. 2020) (unpublished mem. disp.) (finding, on direct review, a "genuine possibility" that jurors "could

have found Romero guilty of attempting to transport or harbor the undocumented immigrants, or of completing those offenses.").

Inclusion of an invalid legal theory in the jury's instruction was harmless. Stuker is not entitled to relief.

### III.  Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2255 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."  *Id.* at 338.

Stuker has prevailed on all issues except the last two:  whether harmless error analysis applies even when the modified categorical approach shows the defendant's conviction under 18 U.S.C. § 924(c) depended solely on a divisible statute, and if so, whether the error was harmless in this case.  A certificate of

appealability is granted on those issues.

Accordingly, IT IS ORDERED:

1. Stuker's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 169) is DENIED.

2. A certificate of appealability is GRANTED on the issues of whether harmless error analysis applies and whether the error in this case was harmless. The clerk shall immediately process the appeal if Stuker files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 20-108-BLG-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Stuker.

DATED this 9th day of June, 2021.

Dana L. Christensen, District Judge
United States District Court